<table>
<tr><td colspan="3">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL IV</td></tr>
<tr>
<td>HONYADI MEDINA SANTIAGO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida</td>
<td>TA2025RA00348</td>
<td>*Revisión* procedente del Departamento del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>ICG-629-2025<br><br>Sobre:<br>Solicitud de Servicio Correspondiente al área Socio Penal</td>
</tr>
</table>

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

Comparece Honyadi Medina Santiago (en adelante, recurrente) mediante un recurso de revisión para solicitarnos la revisión de la *Resolución* emitida el 22 de octubre de 2025, y notificada el 27 de octubre de 2025, por el Departamento de Corrección y Rehabilitación (en adelante, DCR).[1] Mediante *Respuesta del Área concernida/superintendente,*[2] emitida el 6 de agosto de 2025 y notificada el 12 de agosto de 2025, el DCR le expresó al recurrente que fue referido a las terapias y que se le dio seguimiento. Además, le indicó que el mínimo -*para cumplir la sentencia*- estaba para el año 2029, por lo que le faltaban más de años (2) años para cumplirlo y que esa fecha sería utilizada para integrarlo a su tratamiento. Sobre dicha *Respuesta*, el recurrente presentó una oportuna solicitud de reconsideración. Atendida la solicitud de reconsideración, mediante la *Resolución* recurrida,

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 4, Anejo 1, pags. 12-14.
[2] SUMAC TA, a la Entrada Núm. 4, Anejo 1, págs. 5-6

emitida el 22 de octubre de 2025, notificada al recurrente el 27 de octubre de 2025, el DCR dispuso modificar la respuesta y, así modificada, confirmar la misma.[3]

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

El caso del título inició cuando, el 21 de julio de 2025, el recurrente interpuso una *Solicitud de remedio administrativo* ante la División de Remedios Administrativos del DCR.[4] Solicitó asistencia en torno a cierta terapia que debía recibir. Adujo que la antedicha terapia era necesaria para cuando lo viera la Junta de Libertad bajo Palabra, con la finalidad de que esto no fuese un impedimento para obtener ese privilegio.

En fecha de 6 de agosto de 2025, notificada el 12 de agosto de 2025, el DCR emitió la *Respuesta del área concernida/superintendente* (Respuesta).[5] En ella, le expresaron al recurrente que fue referido a las terapias y que se le dio seguimiento. Además, le indicaron que el mínimo *-para cumplir la sentencia-* estaba para el año 2029, por lo que le faltaban más de dos (2) años para cumplirlo y que esa fecha sería utilizada para integrarlo a su tratamiento.

En desacuerdo, el 23 de agosto de 2025, el recurrente instó una *Solicitud de reconsideración.*[6] Adujo que no estaba de acuerdo con la respuesta recibida. Fundamentó su inconformidad en que el DCR "esperan todo para [ú]ltima hora y no quiero tener ning[ú]n tipo de problema cuando me toque la [libertad] bajo palabra."[7] Esbozó, además, que él no tenía que esperar hasta el año 2029.

---

[3] SUMAC TA, a la Entrada Núm. 4, Anejo 1, pág. 12.
[4] *Íd.*, a la Entrada Núm. 1, Anejos, pág. 7.
[5] *Íd.*, págs. 5-6.
[6] *Íd.*, pág. 4.
[7] *Íd.*

De ahí, el 10 de septiembre de 2025, notificada el 12 del mismo mes y año, el DCR dispuso acoger la solicitud de reconsideración interpuesta.[8]

Luego, el 22 de octubre de 2025, el DCR emitió la *Resolución* recurrida.[9] Dicha *Resolución* le fue notificada el 27 de octubre de 2025, al recurrente.[10] Mediante la *Resolución* recurrida, el DCR confirmó la *Respuesta* y modificó la misma para explicar el trámite que se le ha dado a la solicitud del recurrente. Puntualizó que el recurrente cumplía su mínimo de sentencia en tres (3) años y dos (2) meses y que, de continuar con buenos ajustes y laborando, sería menos tiempo de eso y la Técnica socio penal lo estaría enviando al área de Programa de SPEA -*para el asunto de las terapias*-. Se le explicó que debía esperar, pero, que continuara atento.

Inconforme, el 6 de noviembre de 2025, el recurrente presentó un recurso de revisión en el cual, aunque propiamente no esgrimió la comisión de ningún error por parte del DCR, manifestó su inconformidad con ciertas terapias que presuntamente no le brindaron. Mediante *Resolución* emitida el 13 de noviembre de 2025, concedimos al DCR, por conducto de la Oficina del Procurador General, hasta el 8 de diciembre de 2025, para exponer su posición en cuanto al recurso. Por otro lado, mediante *Resolución* emitida el 14 de noviembre de 2025, concedimos término al DCR para remitirnos ciertos documentos con la finalidad de auscultar nuestra jurisdicción.

En cumplimiento con lo ordenado, el 25 de noviembre de 2025, compareció el DCR por conducto de la Oficina del Procurador General para presentar los documentos requeridos. Habiendo decursado el término concedido a la Oficina del Procurador General,

---

[8] SUMAC TA, a la Entrada Núm. 4, Anejo 1, págs. 9-11.
[9] *Íd.*, a la Entrada Núm. 1, Anejos, págs. 1-2.
[10] SUMAC TA, a la Entrada Núm. 4, Anejo 1, pág. 12.

procederemos a disponer del recurso sin el beneficio de su comparecencia.

II

### A. La Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[11] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[12] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[13] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[14] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[15]

A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[16] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además,

---

[11] *Asoc. Condómines v. Meadow Dev.*, 190DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).
[12] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[13] *Asoc. Condómines v. Meadows Dev.,* supra, a la pág. 847.
[14] *Empresas Ferrer v. ARPe*, 172 DPR 254, 264 (2007).
[15] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018).
[16] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias. V. Caribe Specailty et al. II,* 179 DPR 923, 940 (2010); *Mun. de San Juan v. JCA,* 149 DPR 263, 279-280 (1999).

otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[17]

Es norma sabida que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[18] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[19] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[20] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[21] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[22] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[23] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[24] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[25]

---

[17] *Asoc. Vec. Altamesa Este v. Mun. de San Juan,* 140 DPR 24, 34 (1996).
[18] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.
[19] *Íd.*
[20] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[21] *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[22] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.
[23] *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 437 (1997).
[24] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[25] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[26] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[27] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[28] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[29] Lo anterior fue reiterado por nuestro Tribunal Supremo cuando expresó que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos."[30]

Establecido lo anterior, es de ver que los foros apelativos deberán intervenir con las decisiones de las agencias administrativas cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, o (iv) la actuación administrativa lesiona derechos constitucionales

---

[26] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[27] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[28] *Otero v. Toyota*, supra, a la pág. 728.
[29] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[30] *Vázquez et al v. DACO,* 2025 TSPR 56, 215 DPR __ (2025).

fundamentales.[31] Entiéndase que, aunque los tribunales están llamados a conceder cierta deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[32]

### B. Solicitudes de Remedios Administrativos Radicadas por la Población Correccional

La División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (División) se estableció con el propósito principal de proveerles a los miembros de la población correccional un organismo administrativo al cual puedan recurrir en primera instancia mediante una solicitud de remedio. Ello, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal y para evitar o reducir la presentación de pleitos en los Tribunales de Justicia.[33] A tenor, la División se encarga, esencialmente, de atender quejas y agravios de los confinados, en contra del DCR o sus funcionarios, sobre asuntos tales como: (i) agresiones físicas, verbales y sexuales; (ii) propiedad de confinados; (iii) plan de recreación; (iv) ejercicios; (v) uso de biblioteca para fines recreativos, entre otros.[34]

Ahora bien, la División, asumirá jurisdicción sobre aquellas solicitudes de remedio presentadas por un miembro de la población correccional con el fin de que se atienda un asunto relacionado a su confinamiento, que lo afecte personalmente en su bienestar físico o

---

[31] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe,* supra, a la pág. 264.
[32] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).
[33] Introducción del Reglamento para Atender Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 8583 del 4 de mayo de 2015.
[34] *Íd.*

mental, calidad de vida, seguridad o plan institucional.[35] A esos efectos, se entenderá que una solicitud es fútil o insustancial cuando se radique sin méritos y no propicie la concesión de un remedio al amparo del Reglamento Núm. 8583.[36] Particularmente, la Regla XIII del referido reglamento, dispone que el evaluador de la solicitud tendrá la facultad para desestimarla cuando el miembro de la población correccional emita opiniones que no estén dirigidas a remediar una situación relacionada con su confinamiento.[37] Habida cuenta de ello, los miembros de la población correccional serán responsables de presentar las solicitudes de remedio en forma clara, concisa y honesta.[38]

III

En el presente recurso, el recurrente nos solicita la revisión de una *Resolución* del DCR, debido a su inconformidad por entender que la agencia recurrida no ha cumplido con brindarle unas terapias que alega necesitar.

Luego de estudiar la totalidad de los autos ante nos, incluyendo la postura del recurrente, colegimos que no amerita que intervengamos con lo actuado por el DCR. Abundamos.

Al ejercer la facultad revisora de nuestro foro apelativo, debemos conceder una gran deferencia a las decisiones emitidas por los organismos administrativos, puesto que ostentan vasta experiencia y conocimiento en los asuntos que le han sido encomendados. Si del análisis realizado se desprende que la interpretación que hace una agencia resulta razonable, nos corresponde abstenernos de intervenir.

Ahora bien, se justifica nuestra intervención cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya

---

[35] Reglas IV (24) y VI (1)(a) del Reglamento Núm. 8583, *supra*; *Vargas Serrano v. Inst. Correccional*, 198 DPR 230, 243 (2017).
[36] Regla IV (25) del Reglamento Núm. 8583.
[37] *Íd.,* Regla XIII (5)(g).
[38] *Íd.,* Regla VII (1).

errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, y cuando (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.

En el caso de marras, mediante la *Resolución* emitida por el DCR, se le informó al recurrente que, para beneficiarse de las mencionadas terapias, debe esperar tres (3) años y dos (2) meses, que es el tiempo restante para la fecha en la cual cumpliría su mínimo de sentencia.  Lo anterior, puesto a que cumplirá el mínimo de sentencia en la fecha del 21 de abril de 2029. Explicó que hay otros confinados con mínimos de sentencia menores al suyo y que, por tal razon, lo colocarían en una lista de espera para las terapias.

Evaluada la totalidad de los autos, colegimos que la determinación del DCR es una razonable y no cumple con ninguna de las excepciones que nuestro ordenamiento provee.  Por consiguiente, no amerita la intervención de este foro revisor. Por lo cual, procede confirmar el dictamen recurrido.

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones